**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **JAMES ANDERSON,** | * |
| | * |
| **Plaintiff,** | * |
| | * **CV** |
| **v.** | * |
| | * |
| **FREDERICK FORD MERCURY, INC.** | * |
| | * |
| **Defendant.** | * |
| | * |
| | * |

**CIVIL ACTION-COMPLAINT**

Plaintiff JAMES ANDERSON, by and through his attorney, Maggie

Clausell, hereby brings this Complaint against Frederick Ford Mercury, Inc.,

(hereinafter "Frederick Ford" or "dealership"), and in support, aver the following:

**PRELIMINARY STATEMENT**

1.      This action arises out of the facts and circumstances surrounding an

increasingly common practice in the retail sales industry called "spot delivery" or

a "yo-yo sale".  Using this practice, the dealer sells an automobile to the consumer

"on the spot", but intends to string the customer out like a yo-yo, and then yank

them back to force them into an agreement on different terms.  Typically, the

consumer signs all the paperwork, receives a certificate of ownership, temporary

or transferred tags, and possession of the automobile.  The dealer represents to

the consumer that everything is approved.  The consumer leaves the dealership

believing they own the automobile.  The sale is financed by the dealer (as the

creditor) on a Retail Installment Sales Contract which the dealer states will be, or

has already been, assigned to a third party.    As in the present case, the dealer knows that the contract cannot be sold to the third party, that the third party has refused to purchase it, and that it will require the consumer to agree to more adverse terms to keep the car.  Many consumers simply agree to the terms.  A few, such as the Plaintiff object.  Therefore, the Plaintiff asserts claims for violations of the Truth in Lending Act (hereinafter, "TILA"), 15 U.S.C. §1601 *et seq.*, the Federal Reserve Board's Regulation Z, 12 C.F.R § 226 *et seq.* (hereinafter, "Reg. Z"), the Equal Credit Opportunity Action (hereinafter, "ECOA"), 15 U.S.C. §1691 *et seq.*; Federal Reserve Board's Regulation B, 12 C.F.R Part 202, the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. § 1681 *et seq.,* and claims under Delaware law.  Plaintiffs seek actual damages, punitive damages, costs and attorneys fees.

## **PARTIES**

2.      James Anderson is a Delaware Resident residing at 107 Montgomery Street, Milford, DE 19963, and is a consumer as governed by TILA, 15 U.S.C. §1602(d) and Reg. Z §226.2(a)(1).

3.      Frederick Ford Mercury, Inc. is a Delaware corporation, doing business at 26905 Sussex Highway, Seaford, Delaware, whose registered agent is Gregory Mayer, Rte. 13 South, Post Office Box 1420, Seaford, DE 19973.

4.      At all times relevant thereto, Frederick Ford Mercury was a "creditor" as defined and governed by the TILA 15 U.S.C. § 1602(f) and Reg. Z §226.2(a)(17).

5.      At all times relevant thereto, Frederick Ford Mercury was a "creditor" as defined and governed by the ECOA 15 U.S.C. §1691a(e) and Reg. B., 12 C.F.R. §202.2(1).

6.      At all times relevant thereto, Frederick Ford Mercury was a user of a consumer report as governed by FCRA, 15 U.S.C. §§1681(b) and 1681(m).

7.      At all relevant times, Defendant acted through its agents and employees.

## JURISDICTION AND VENUE

8.      This court has subject matter jurisdiction over this Complaint pursuant to TILA, 15 U.S.C. §1640(e), the ECOA, 15 U.S.C § 1691 *et seq.*, Reg. B., 12 C.F.R. §20214(b)(2), FCRA, 15 U. S. C. § 1681 *et. seq.* and  28 U. S. C. § 1331.

9.      Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction as codified at 28 U. S. C. §1367.

10.     Venue is proper in the District of Delaware as all of the claims herein arose within the jurisdiction of the United States District Court of Delaware and 28 U. S. C. §1391.

## STATUTORY STRUCTURE
## 1. FAIR CREDIT REPORTING ACT

11.     The Fair Credit Reporting Act (FCRA) 15 U. S. C. §1681 *et seq.* was enacted to require the consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with

regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  15 U. S. C. § 1681 (b).

12.      Under the FCRA , whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum accuracy of the information concerning the individual about whom the report relates.  15 U. S. C. §1681 e (b).

13.      Under the FCRA, a person who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate (15 U. S. C. § 1681s-2(a)(2).

14.      The FCRA limits access to a consumer's credit information by defining permissible purposes under which the consumer's credit profile can be viewed or published (15 U.S.C. §1681b(1)-1681b(3)(A-F).

15.      Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer, is liable to that consumer in an amount equal to the sum of any actual damages

sustained by the consumer as a result of the failure or damages of not less than

$100 or more than $1000; such amount of punitive damages as the Court may

allow; and the costs of the action together with reasonable attorney's fees.

15 U. S. C. § 1681n.

## FACTUAL ALLEGATIONS

16.     Paragraphs 1-15 are incorporated by reference as if fully set out herein.

17.     On about April 28, 2008, Plaintiff signed a Retail Installment Sales

Contract (RISC-I) for the purchase a 2005 Chrysler Town and Country (VIN #

2C4GP44R75R171285) vehicle from Frederick Ford Mercury (Exhibit A).

18.     Plaintiff traded in a 1999 Pontiac Montana  (VIN 1GMDX03E7XD159441)

towards the purchase price of the 2005 Chrysler Town and Country.

19.     The cash price of the vehicle in RISC-I was $12924.00

20.     To the best of the Plaintiff's knowledge, information and belief, the vehicle

he purchased was to be financed by Regional Acceptance Corporation because

this is what the dealer told the Plaintiff's insurance company (Exhibit B).

21.     Defendant represented to Plaintiff that he was approved for financing

(Exhibit F).

22.     Defendant represented to the mother of Plaintiff's son, Heather Say, that

Plaintiff had been approved for financing (Exhibit F).

23.     The RISC-I signed by the Plaintiff had Chase at the top of the form and the

car was to be financed at for 66 months at $276.00 per months 22% APR and the

first payment was due June 1, 2008.

24.     On about April 29, 2008, Plaintiff returned to Dealer to pick up temporary

tags and to sign over title to the trade in vehicle.

25.     On about April 29, 2008 Plaintiff was told he needed to sign a second

Retail Installment Sales Contract (RISC-II) for the vehicle he purchased

(Exhibit C).

26.     The vehicle was purportedly financed by Wilmington Trust.  The monthly

payment was $236.21 per month for 63 months at 19.20% APR.

27.     The cash price for the vehicle in RISC-II was $10788.73 and was backdated

for April 28, 2008 although it was signed on April 29, 2008.

28.     Plaintiff received a temporary tag (Exhibit D).

29.     From the period of April 29, 2008 to May 9, 2008, Plaintiff had full use of

the vehicle and it was fully insured by Plaintiff's insurance company.

30.     On May 9, 2008, Plaintiff received a call from "Mike" from Frederick Ford

Mercury telling him that he needed to come in with the vehicle to sign some

"paperwork" relating to the titling of vehicle in RISC-II.

31.     On May 12, 2008 Plaintiff received two phone calls from the Dealership on

his cell phone which he could not accept because he was working.

32.     On May 12, 2008 Plaintiff received a call to his work number.

33.     Jeff Newman of the Dealership called to say that Plaintiff had to return the

new vehicle and pick up the trade in vehicle

34.     On May 12, 2008 Mr. Jeff Newman called again to ask Plaintiff to sign

another contract for another vehicle.

35.     On May 15, 2008, Plaintiff received a call from "Mike" of the Dealership to tell the Plaintiff to return the vehicle immediately.

36.     Mike told Plaintiff had he was driving a stolen vehicle and that he would be reported to the State Police to have him arrested for possession of a stolen vehicle.

37.     On May 15, 2008 Plaintiff called who he believed to be the owner of the company, Mr. Hertrich, to talk about the problem.

38.     On May 15, 2008, Mr. Hertrich called Plaintiff to say that Plaintiff did not get financed and that he signed a paper stating that he would return the vehicle if he was not approved.

39.     Mr. Hertrich promised to meet Plaintiff on May 27, 2008 to discuss the problem, but he failed to show up as promised.

40.     On May 29, 2008, Plaintiff went to Wilmington Trust Bank to pay for the first car note, but Wilmington Trust Bank declined to accept the payment because they said they did not finance the vehicle (Exhibit E).

41.     Frederick Ford Mercury repossessed the vehicle at approximately 1:00 am on June 4, 2008.

42.     On June 14, 2008, Plaintiff retrieved trade in vehicle from Frederick Ford Mercury.

43.     Between the period of April 21, 2008 and May 19, 2008, there were 24 inquiries on Plaintiff's credit report related to the transaction with the Defendant.

44.     On April 28, 2008, Plaintiff instructed Defendant to refrain from causing any additional credit inquiries.

45.     Eleven (11) of the inquiries on Plaintiff's credit report occurred after April 28, 2008.

46.     As of May 29, 2008, the Plaintiff had not received financing of his purchase for the vehicle in RISC-II.

47.     As of May 29, 2008, the Plaintiff had not been notified that his application for financing had been denied by the Defendant Frederick Ford Mercury, Inc.

## COUNT I-BREACH OF CONTRACT

48.     Paragraphs 1-47 are incorporated by reference as if fully set out herein.

49.     Plaintiff entered into a contractual agreement for the purchase of a 2005 Chrysler Town and Country van.   The agreement was memorialized in RISC-II date April 28, 2008 although it was signed on April 29, 2008.  The representations of the Defendant's agents and representatives upon which the Plaintiff reasonably relied, became part of the basis of the bargain and part of the contractual agreement as well.

50.     As part of the April 28, 2008 agreement, Defendant offered to sell Plaintiff a vehicle based on the financing terms set forth is RISC-I and later RISC-II if the Plaintiff tendered a down payment of $2500.00

51.     Plaintiff accepted the terms of the agreement and tendered the requirement down payment and the 1999 Pontiac Montana as consideration for the contract.

52.     Plaintiff did not default on the terms of the contract.

53.     Plaintiff breached the contractual agreement by failing to provide financing upon the terms agreed to as part of the transaction and memorialized in Exhibits A and C.

54.     Defendant breached its contract with Plaintiff when it repossessed his vehicle on June 4, 2008.  Plaintiff suffered injuries because of Defendant's brief, including loss of the use of the vehicle, emotional pain, suffering, humiliation and embarrassment.

        WHEREFORE, the Plaintiff seeks judgment against Defendant as to Count I for full amount of his actual damages in an amount to be proven at trial, plus interest, costs, attorney fees, and all such further relief as this Court deems just and proper.

## COUNT II-VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT

55.     Paragraphs 1-54 are incorporated by reference as if fully set out herein.

56.     The Equal Credit Opportunity Act (ECOA) as codified at 15 U.S.C. §1691 *et seq.* imposes specific requirements on creditors to notify applicants of the action take on their applications.

57.     Plaintiff was an "applicant" as defined by ECOA because he applied directly and indirectly to a creditor for an extension of credit as defined in 15 U.S.C. §1691a(b).

58.     Defendant Frederick Ford Mercury is a "creditor" as defined by ECOA because it is a person who regularly extends credit and regularly arranges for the extension of credit as defined in 15 U.S.C. §1691 a(e).

59.     The ECOA 15 U.S.C. §1691(d), provides in pertinent part: (1) "within thirty days...after receipt of a completed application for credit, a creditor shall notify the applicant of its action of the application.

60.     The Defendant violated the ECOA, 15 U.S.C. §1691(d) by failing to make a credit decision within thirty (30) days after the receipt the Plaintiff's April 28, 2008 completed application for credit.

61.     The Defendant violated ECOA, 15 U.S.C. § 1891(d) by failing to provide the Plaintiff with a written notification of adverse action or other reasons for denial of credit and to provide the disclosures mandated by 15 U.S.C. § 1691(d).

62.     As a result of the above ECOA violations, the Plaintiff has suffered substantial actual damages in the loss of his rights to determine the basis for the credit denial, his loss of the credit itself, frustration, anger, humiliation, fear, embarrassment, and other emotional and mental anguish.

63.     Plaintiff seeks judgment against Defendant for his actual damages pursuant to 15 U.S.C. §1691e(a) and attorney fees and costs pursuant to 15 U.S.C. §1691e(d).

64.     Therefore, the Plaintiff requests punitive damages pursuant to 15 U.S.C. §1691e(a) to punish and deter Defendant from committing further willful

violations of the ECOA, to deter other dealerships from committing violations of the act, and to compensate him for the public service in bringing this action.

WHEREFORE, the Plaintiff seeks judgment against Defendant for his actual damages pursuant to 15 U.S.C. §1691e(a), for punitive damages of $10,000.00 against Defendant pursuant to 15 U.S.C. §1691e(b) and for attorney's fees and costs pursuant to 15 U.S.C. §1691 e(d).

## COUNT III-REGULATION B VIOLATIONS

65.     Paragraphs 1-64 are incorporated by reference as if fully set out herein.

66.     The Federal Reserve Board's Regulation B, 12 C.F.R. Part 202 applies to all person who are creditors and requires creditors to notify the applicants of action taken on their applications. 12 C.F.R. § 202.1.

67.     Adverse action under Reg. B is defined as "A refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered; .." 12 C.F.R. §202.2(c).

68.     "Consumer Credit" means credit extended to a natural person primarily for person, family, or household purposes. 12 C.F.R. §202.2(h).

69.     "Creditor" means a person who, in the ordinary course of business, regularly participates in the decision of whether or not to extend credit 12 C.F.R. §201.2(1).

70.     A creditor shall notify an applicant of action takes within (i) 30 days after receiving a completed application concerning the creditor's approval or, counteroffer to, or adverse action on the application; (ii) 30 days after taking adverse action or an incomplete application, unless notice is provided in accordance with paragraph (c) of this subsection. 12 C.F.R. §202.9(a).

71.     If additional information is need from an applicant, the creditor shall send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application.  The creditor shall have no further obligation under this section if the applicant fails to respond within the designated time period.  If the applicant supplies the requested information within the designated time period, the creditor shall take action on the application and notify the applicant in accordance with paragraph (a) of this subsection. 12 C.F.R. § 202.9(c)(2).

72.     At its option, a creditor may inform the applicant orally of the need for additional information; but if the application remains incomplete, the creditor shall send a notice in accordance with paragraph (c)(1) of this section. 12 C.F.R §202.9(c)(3).

73.     Defendant Frederick Ford Mercury failed to notify the Plaintiff of the action taken on his application for credit within 30 days after receiving is application in violation of 12 C.F.R. §202.9(a).

74. Defendant Frederick Ford Mercury failed to send the Plaintiff a written notice of adverse action taken in violation of 12 C.F.R. §202.0(a)(2).

75. Defendant Frederick Ford failed to send a written notice to the Plaintiff specifying the additional information needed in order to grant the Plaintiff credit in violation of 12 C.F. R. § 202.9(c).

76. As a result of these Regulation B violations, Defendant to Plaintiff for actual damages, punitive damages up to $10,000.00 and reasonable attorney's fees and costs pursuant to 12 C.F.R. § 202.14(b).

WHEREFORE, the Plaintiff seeks judgment against Defendant on Count III for actual damages in an amount to be proven at trial; punitive damages for $10,000.00; plus interest, costs, attorney's fees, and all such further relief as this Court deems just and proper.

## COUNT IV- FAIR CREDIT REPORTING ACT VIOLATION

77. Paragraphs 1-76 are incorporated by reference as if fully set out herein.

78. The Fair Credit Reporting Act (FCRA), as codified at 15 U.S.C. §1681 *et. seq*, imposes specific obligations upon users of consumer credit reports.

79. Plaintiff is a "consumer" as defined by the FCRA because she is an individual as defined in 15 U.S.C. §1681a(b).

80. The FCRA, 15 U.S.C. § 1681m, provides in pertinent part:

If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report shall--

(1)	provide oral, written, or electronic notice of the adverse

action to the consumer;

(2)   provide to the consumer orally, in writing or electronically

(A)  the name, address, and telephone number of the consumer Reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person, and

(3)   provide to the consumer an oral, written or electronic notice of the consumer's right

(A) to obtain a free copy of the a consumer report on the consumer from the consumer reporting agency which notice shall include an indication of the 60-day period…for obtaining such a copy, and

(B)  to dispute with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency

81.   An action taken or determination that is made in connection with an application that was made by, or a transaction that was initiated by, any consumer and adverse to the interests of the consumer constitutes an adverse action under the FCRA 15 U.S.C. §1681a(k).

82.   Defendant took adverse action against the Plaintiff by denying him credit.

83.   Defendant willfully and/or negligently violated 15 U.S.C. §1681m by failing to notify the Plaintiff of the adverse action in accordance with 15 U.S.C. § 1681m.

84.   In addition to the violation of 15 U.S.C. §1681m(a), if the credit decision was based on information other than information obtained from a credit

14

reporting agency, Defendant willfully and/or negligently violated the FCRA by

failing to provide the notice required by 15 U.S.C. § 1681b.

85.      As a result of the above-alleged FCRA violations, the Plaintiff has suffered

substantial actual damages in the loss of his rights to determine the basis for

credit denial, the loss of the credit itself, the presence of repeated hits on his

credit reports, frustration anger, humiliation, fear, embarrassment and other

emotional and mental anguish.

86.      On April 28, 2008 Plaintiff revoked his authorization for Defendant to

access his credit report.

87.      Defendant acted willfully by accessing or causing to be accessed Plaintiff's

credit report after April 28, 2008 when Plaintiff instructed Defendant not to make

any additional inquires on his credit report.

88.      Defendant caused eleven (11) post April 28, 2008 inquires on Plaintiff's

credit report.

89.      Defendant violated 15 U.S.C. § 1681(b)(a)(3)(a) when it made, or caused to

be made, eleven (11) post April 28, 2008 inquires on Plaintiff's credit report.

90.      Each inquiry caused a lowering of Plaintiff's credit score.

91.      The net result of Defendant's violation was to reduce Plaintiff's credit

worthiness.

92.      As a result of these FCRA violations, Defendant is liable to the Plaintiff for

Statutory damages from $100.00 to $1, 000.00 pursuant to 15 U.S.C. §1681

n(a)(1)(A),  actual damages pursuant to 15 U.S.C. §1681o,  punitive damages

pursuant to 15 U.S.C. §1681 n(a)(2), and attorneys fees and costs pursuant to 15 U.S.C. § 1681 n(a)(3) and 1681 o(b).

WHEREFORE, the Plaintiff seeks judgment against Defendant for his statutory damages from $100.00 to $1, 000.00 pursuant to 15 U.S.C. §1681 n(a)(1)(A),  actual damages pursuant to 15 U.S.C. §1681o,  punitive damages pursuant to 15 U.S.C. §1681 n(a)(2), and attorneys fees and costs pursuant to 15 U.S.C. § 1681 n(a)(3) and 1681 o(b).

## COUNT V-VIOLATION OF DELAWARE 6 Del. C. § 9-609
## WRONGFUL REPOSSESSION

93.     Paragraphs 1-92 are incorporated by reference as if fully set out herein.

94.     On June 4, 2008, Defendant caused the vehicle Plaintiff has purchased

from Defendant to be repossessed when he was not in default of the terms of the

contract.

95.     By repossessing the vehicle on June 4, 2008 Defendant violated

6 Del. C. § 9-609 of the Delaware code.

96.     Pursuant to 9 Del. C. § 625 (c)(2), Plaintiff seeks actual damages of

the credit service amount plus 10% of the cash price of the vehicle.

97.     Pursuant to 9 Del. C. § 625 (b), Plaintiff seeks actual damages of

to be determine at trial for the loss resulting from Plaintiff's inability to obtain

financing.

        WHEREFORE now, Plaintiff seeks actual damages of the credit service

amount, plus 10% of the credit service, other actual damages to be determined at

trial, attorney's fees and costs.

## COUNT VI
## FAILURE TO NOTIFY DISPOSITION OF COLLATERAL

98.     Paragraphs 1-97 are incorporated by reference as if fully set out herein.

99.     Defendant had a valid security interest in the repossessed vehicle.

100.    Defendant violated 6 Del. C. § 9-611 of the Delaware code by failing to

provide Plaintiff any notice of the disposition of the vehicle.

101.     Pursuant to 9 <u>Del. C.</u> § 625 (c)(2), Plaintiff seeks actual damages of the credit service amount plus 10% of the cash price of the vehicle.

102.     Pursuant to 9 <u>Del. C.</u> § 625 (b), Plaintiff seeks actual damages of to be determine at trial for the loss resulting from Plaintiff's inability to obtain financing.

WHEREFORE now, Plaintiff seeks actual damages of the credit service amount, plus 10% of the credit service, other actual damages to be determined at trial, attorney's fees and costs.

**COUNT VII**
**CONVERSION**

103.     Paragraphs 1-102 are incorporated by reference as if fully set out herein.

104.     Defendant converted Plaintiff's property by illegally repossessing the vehicle without benefit of judicial process or other rights pursuant to Article 9 of the Uniform Commercial Code.

WHEREFORE, the Plaintiff seeks judgment against Defendant as to Count VII for full amount of his actual damages in an amount to be proven at trial, plus interest, costs, attorney fees, and all such further relief as this Court deems just and proper.

## COUNT VIII
## FRAUD

105.    Paragraphs 1-104 are incorporated by reference as if fully set out herein.

106.    Defendant acting through its agents and representatives committed fraud in connection with the consumer transaction described herein, by engaging in a practice described as a "yo-yo" sale.

107.    Defendant through his agents and employees falsely represented to Plaintiff that he was approved for financing on the terms in RISC-II.

108.    Plaintiff relied on Defendant's representation that he had purchased the 2005 Town and Country van and kept it from April 29, 2008 until June 4, 2008 when it was wrongfully repossessed.

109.    Defendant backdated the RISC-II to receive further benefits from finance charges during the entire contractual period.

110.    Defendant knew or should have known that Plaintiff had not been approved for financing on April 28, 2008 or April 29, 2008.

111.    Defendant's actions damaged Plaintiff because he did not obtain the vehicle he sought to purchase.

112.    Defendant's actions caused at least eleven inquires on Plaintiff's credit report after Defendant was instructed not to place any more credit inquires on his credit report.

113.    Defendant's actions damaged Plaintiff's credit rating and caused him embarrassment, humiliation, mental anguish and emotional distress.

WHEREFORE, the Plaintiff seeks judgment against Defendant as to Count VIII for full amount of his actual damages in an amount to be proven at trial, punitive damages in the amount $1,000,000 plus interest, costs, attorney fees, and all such further relief as this Court deems just and proper.

## COUNT IX
## VIOLATION OF THE TILA, 15 U.S.C § 1601 et seq.
## AND REGULATION Z, 12 CFR § 226.3

114.    Paragraphs 1-113 are incorporated by reference as if fully set out herein.

115.    Defendant violated the Truth In Lending Act and Regulation Z because it failed to accurately state the amount financed as there were fewer days in the payment period than Defendant calculated and disclosed.

116.    Defendant violated TILA as the effective APR was greater than the amount stated in RISC-II and exceeded the tolerances established by 12 C.F.R. 226.3.

117.    In the alternative to the allegations in Paragraph 116, Defendant violated the TILA because it failed to disclose that the APR and the total finance charges were estimates.

WHEREFORE, the Plaintiff seeks judgment against Defendant on Count VIII in the amount of his actual damages pursuant to 15 U.S.C. § 1640(a)(1) in an amount to be proven at trial, statutory damages of two times (2x) the finance charge pursuant to 15 U.S.C. § 1640(a)(2)(A)(i), plus interest, costs, attorney fees and all such further relief as this Court deems just and proper.

## COUNT X
## CONSUMER FRAUD

118.    Paragraphs 1-117 are incorporated by reference as if fully set out herein.

119.    Defendant violated 6 Del. C .§2513 as it committed fraud and

engaged in deceptive practices when it caused Plaintiff to believe that he was

the owner of the vehicle.

120.    Defendant violated 6 Del. C. § 2513 when it backdated RISC-II to

April 28, 2008 and in doing so, violated TILA.

WHEREFORE, the Plaintiff seeks judgment against Defendant as to

Count VIII for full amount of his actual damages in an amount to be proven

at trial, plus interest, costs, attorney fees, and all such further relief as this

Court deems just and proper.


**JURY TRIAL DEMANDED**

Plaintiff demands a Trial by Jury on all Issues.

This _____ day of October 2008.

**LAW OFFICE OF MAGGIE CLAUSELL,**

**/S/ Maggie Clausell**
_____
Maggie Clausell
DE Bar ID #4532
9 E Loockerman Street, Ste. 205
Dover, DE 19901
302-678-7644 (voice)
302-678-0771 (fax)


DATED:  October 29, 2008